**IT IS ORDERED as set forth below:**



Date: February 5, 2024

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | CASE NO. **23-54072-PMB** |
| **JASON ARNEL RANDALL, JR.,** | : | |
| | : | CHAPTER 7 |
| Debtor. | : | |
| | : | |
| **DELTA COMMUNITY CREDIT UNION**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **23-5065** |
| **JASON ARNEL RANDALL, JR.,** | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING RELIEF

Delta Community Credit Union (the "Plaintiff") initiated this Adversary Proceeding (the "Adversary Proceeding") against Jason Arnel Randall, Jr., the Defendant-Debtor named above (the "Debtor"), by filing a *Complaint to Determine Dischargeability of Debt* on May 16, 2023

(Docket No. 1)(the "First Complaint").  Based on the Debtor's failure to answer or respond, the Clerk entered a Default on July 12, 2023.  *See* Docket, *passim*.  The Plaintiff then filed a *Motion for Entry of Default Judgment* on July 12, 2023 (Docket No. 4) and *Default Offer of Judgment* on several occasions, most recently in the form of a proposed Default Judgment on August 8, 2023 (Docket No. 8).  Due to various deficiencies in the pleadings to that point, the Plaintiff filed an *Amended Complaint to Determine Dischargeability of Debt* on September 21, 2023 (Docket No. 11)(the "Amended Complaint").[1]  To date, the Debtor has not answered or otherwise responded to the Amended Complaint.[2]  On November 9, 2023, the Plaintiff filed a *Request for Entry of Default Judgment*, *see* Docket No. 14 (the "Request for Entry of Relief").[3]

In the Amended Complaint, the Plaintiff asserts certain actions taken by the Debtor in connection with an account opened with the Plaintiff in 2014 constitute larceny and/or defalcation while acting in a fiduciary capacity[4] under 11 U.S.C. § 523(a)(4).[5]  Specifically, the Plaintiff alleges that the Debtor made a deposit into this account on January 16, 2019, in the amount of

---

[1] An alias summons and copy of the Amended Complaint were served on the Debtor and Debtor's counsel.  *See Certificate of Service*, filed on September 29, 2023 (Docket No. 13). The docket reflects that the Debtor is represented by Aaron Weinberg of the Semrad Law Firm.  No explanation has been provided as to Mr. Weinberg's failure to file anything on behalf of his client in this Adversary Proceeding.  *See* BLR 9010-5 (obtaining permission to withdraw).

[2] The only difference between the First Complaint and the Amended Complaint is an affidavit from an employee of the Plaintiff attached to the Amended Complaint.  That affidavit confirms some of the facts in the Amended Complaint but does not add any new allegations.  *See* Affidavit of Mark Sayer, attached to Amended Complaint (the "Affidavit").

[3] It appears that the Plaintiff omitted the first step of requesting entry of a default by the Clerk on the Amended Complaint, as was entered on the First Complaint, before then seeking entry of a default judgment by the Court in accordance with Federal Rule of Civil Procedure 55(a), applicable herein through Federal Rule of Bankruptcy Procedure 7055.

[4] Although the Amended Complaint references defalcation, it makes no allegations that the Debtor was in any fiduciary capacity as regards the Plaintiff.  Consequently, judgment cannot be granted on that basis.

[5] An *Order of Discharge* was entered in this case on August 18, 2023 (Main Case Docket No. 20).

$3,100.28, and withdrew funds commensurate with this deposit on January 22, 2019.  The Debtor made another deposit on January 17, 2019, in the amount of $2,994.77, and withdrew funds in this amount from the account.  The Plaintiff alleges that the first check was returned to it as being "altered/fictious/ counterfeit" and the second check was also later returned on January 23, 2019, as a "forgery."  As stated in the Affidavit, an individual in the Plaintiff's Loss Prevention Department then allegedly spoke to the Debtor in January of 2019, advising him that he was responsible for these "fraudulent transactions," which totaled $5,513.60

For purposes of establishing an exception to discharge under Section 523(a)(4), larceny is defined as "a felonious taking of property with the intent to convert it or to permanently deprive the owner of it."  *In re Gross*, 2019 WL 2335912, at *2 (Bankr. N.D. Ga. May 31, 2019)(citations omitted).  The Plaintiff has the burden of proving both the elements of a wrongful taking and fraudulent intent; the latter may be shown by circumstantial evidence.  *Gross, supra*; *In re Cunningham*, 482 B.R. 444, 448 (Bankr. N.D. Ala. 2012).

Based on the allegations in the Amended Complaint, and assuming they have been admitted due to the Debtor's failure to answer, the Plaintiff has not shown an entitlement to the relief requested under the applicable legal standard.  For instance, although the two checks at issue may have been forged or fraudulent as alleged since they were returned, it is not alleged whether the Debtor himself forged the checks or whether he even knew of their fraudulent nature when he deposited them and withdrew the funds.  There is also no allegation that the Debtor knowingly presented such checks with the intent of wrongfully taking or converting the Plaintiff's funds. Even if the Plaintiff does not know the Debtor's state of mind in connection with these deposits

and withdrawals, the requisite intent by the Debtor under Section 523(a)(4) must be alleged and proven, by admission or evidence, circumstantial or otherwise.[6]

"Once the creditor presents circumstantial evidence of an intent to deceive, a debtor 'cannot overcome that inference with an unsupported assertion of honest intent.'" *Cunningham, supra*, 482 B.R. at 448 (internal quotations and citations omitted). "Instead, the court should consider whether the [debtor's] actions appear so inconsistent with [a] self-serving statement of intent that the proof leads th[e] court to disbelieve the debtor." *Id.* (internal quotations and citations omitted). Here, there is no response by the Debtor. Even though the Plaintiff's demand for the funds, as described in the Affidavit, may have placed the Debtor on notice that there was, at the very least, a serious question about his right to the funds, it does not automatically follow that the Debtor loses in this instance if he was also defrauded.

The Court cannot speculate on insufficient facts and without more, relief cannot be granted on the grounds requested.[7]

On review of the Amended Complaint and the docket, it is

**ORDERED** that the Request for Entry of Relief is **DENIED** without prejudice.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff, the Debtor, counsel for the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**

---

[6] In the absence of such additional allegations, the existing allegations are altogether consistent with the Debtor having been unknowingly given forged or otherwise altered checks, which he deposited into his account for cash later withdrawn that he could not subsequently repay.

[7] In the case of *In re Waterholter*, 2006 WL 384986 (Bankr. E.D. Va. Jan. 4, 2006), for example, the court took evidence that the debtor forged an endorsement and appropriated the proceeds after depositing the check. Here, there are no such allegations let alone proof of such activity.